# 15CV 8100

David Williams
Fed. Reg. No. 70659-054 SHU
Federal Correctional Institute Gilmer
Post Office Box 6000
Glenville, West Virginia 26351-6000



RECEIVED
OCT 02 2015
PRO SE OFFICE

September 30, 2015

c/o Clerk's Office
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 120
New York, NY 10007-1312

Re:   Application 2255 & Memorandum of Law In Support
      Therein:  USA v. David Williams: 09-cr-558

Dear Clerk:

Compliance with 28 U.S.C. 1746, as a declaration of Oath that the enclosed documents were given to the prison staff at FCI Gilmer, prepaid postage and certification to be forwarded to the the above lised clerks office contemporaneously with AEDPA of 1996, statutes one-year limitation heretofore on the date stated.

/s/ _____

cc: dw/mw
(w-enc.)
Wife's address shall be included.

Therefore, movant asks that the Court grant the following relief: Conviction and Sentence Vacated as a matter of law.

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

(month, date, year).

Executed (signed) on __September  2015__ (date).

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion. Movant is currently confined in the SHU and unable to use the law library not access the required legal documentation to argue his constitutional rights for ineffective assistance of during the trial and or on appeal. Therefore, I Larry SinClair Williams, a legal researcher and advisor located a FCI Gilmer signed the aforemention application and memorandum of law attached.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DAVID WILLILAMS,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

09-CR-558-CM

### MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE HIS CONVICTION PURSUANT TO 28 U.S.C. § 2255

This memeorandum of law is respectfully submitted in support of David Williams (hereinto fore "Movant"), to vacate pursuant to 28 U.S.C. § 2255. Movant is currently incarcerated pursuant to a judgment of this court dated October 18, 2010, convicting him of Counts 1:Conspiracy to use weapons of mass distruction within the United States(18 U.S.C. § 2332a);counts 2,3,3 and 4:attempt to use weapons of mass destruction near or at the Riverdale Temple, in the Bronx, the Riverdale Jewish Center (a synagogue in the Bronx, and the New York air National Guard Base at Newburgh(18 U.S.C. § 2332a); Count Five:Conspiracy to acquire and use anti-aircraft missiles (18 U.S.C. § 2332(g)); Count Six:attempt to acquire and use anti-aircraft missiles(18 U.S.C. § 2332g: Count Seven:conspiracy to kill officers and employees of the United States(18 U,S.C. §§ 1114, 1117); Count Eight:attempt to kill officers and employees of the Untied States(18 U.S.C. §§1114 and 2).

The jury heard the evidence and pronouced movant guilty, thereafter, the court pronounced sentencing on June 28, 2011, and subsequently, a timely Notice of Appeal was filed.

On November 5, 2012, a direct appeal proved an exercise in futilty, and on October 6, 2014, a Writ of Certiorari also proved an exercise in futility.

I. PRO SE PLEADING :

Movant now relies exclusively on this court's liberal construction of his § 2255 petition thru the lens of 2014 U.S. Dist LEXIS 76789::Gonzales v. Option One Onrtg., Corp.::June 3, 3, 2014 ("[P]ro se litigants...can not be expected to know all of the legal theories on which they might ultimately recover,' and, therefore, '[i]t is enough that they were injured, and that their allegations can conceivable give rise to a viable claim.'"). see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

II FACTUAL REVIEW OF THE CASE:

The facts of this particular case bares a voluminous of court proceeding, however, to artfully explain the errors drafted, movant shall argue the facts surrounding the errors submitted to vacate, set aside, and correct his conviction and sentence.

The charged offense in relationship to this case resulted from an elaborate sting operation conduct by the FBI and solicitated informant used by the FBI too ensnarl movant and his cohorts into an elaborate conspiracy to violate Terrorist statutes. See United States v. Cromitie, 781 F. Supp. 2d. 211 ("Cromitie"), and United States v. Cromitie, 727 F. 3d 194 (2d Cir. 2012); see Cromiti II. Evidence presented in this case provided a different picture than what the Second Circuit's Opinion provides.

2

Evidence during the trial showed that Hussain a government informant (ska Masood) orginially contacted co-hort Cromitie in June of 2008. After several meetings the two men relationship flourished. From these conversation between the two men in November 2008, trial transcripts showed that in November of 2008, the men discussed specific inclinations that created an eloboratative scheme to kill Americans and Jews through terrorist like conduct. See Trial Transcripts: 3285, Much of the conversations, somewhat egregious and exaggerated with lies and deceptions, id. Trial Transcripts: 3296, unvailed a plan on attacking specific locations, id. Trial Transcripts, and allegedly synagogues. Id. Trial Transcripts 3316. In this time period, and based upon prior conversations, in December 2008, Mr. Hussain (aka Maqsood) recorded three different conversations with Mr. Cromitie. The record reveals a specific conversation of which Hussain (aka Masood) spoke about a jihad, id. Trial Transcripts: 3449, 3556. However, it was Mr. Hussain (aka Maqsood), id. Trial Transcripts: 3556, that is quoted as stating "lets pick a target," id. Trial Transcripts: 3556, and subsequently "Stewart Airport" was discussed. Mr. Hussain (aka Masood) disappeared and in December of 2008. Without factual evidence, it was alleged that Mr. Haussain (aka Maqsood) went out of the country.

However, in February 23, 2009, Mr. Hussain (aka Maqsood) made conrtact with Mr. Cromitie and preposed another meeting. During this meeting, Mr. Hussain (aka Masood) asked Mr. Cromitie, "the synagogue, where is it in the Bronx or in Brooklyn?" Id. Trial

Transcripts: 3623. With no response, the next day Mr. Hussain (aka Maqsood) met with Mr. Cromitie. During this meeting a conversation alleged that Mr. Cromitie stated, "there's one in [t]he Bronx, uh two or three in Brooklyn." Id. Trial Transcripts: 3623. Mr. Hussain (aka Maqsood) departed. The next day Mr. Haussain (aka Maqsood) returned with a camera and drove Mr. Cromitie to Stewart Airport and therein commenced to taking photographs of the area. Mr. Hussain (aka Maqsood) recorded the conversation of the two men and this recording provides Mr. Cromitie as staing, "imagine if we hit all the planes on one spot." Id. Trial Transcripts: 3845.

In or about 2008 up to February 2009, the two men discussed the idea of reccuiting additional co-horts. Mr. Cromitie is alleged to have stated, "he was going to speak to another man about being a lookout and would 'talk to some guys' and tell them.'" Id. Trial Transcripts: 3655.

Trial Evidence provides that six weeks had expired before Cromitie and Hussain (aka Maqsood) spoke again. However, in April 2009, Mr. Cromitie and Mr. Hussain (aka Maqsood) spoke on the phone. Mr. Hussain (aka Maqsood) recorded this conversation in which the two men discussed financial concerns. Evidence of this conversation between the two men encouraged the two men to meet. On April 7, 2009, the two men met and discussed an exchange of money. Mr. Cromitie is interpreted as aksing Mr. Hussain (Maqsood), for money. And Mr. Hussain (aka maqsood) stating, "I told you, I can make you $250.000 (two hundred and fifty thousand) dolloars but you don't

want it brother." Mr. Hussain (aka Maqsood) added, "what can I tell you." Afterwards, Mr. Husaain (aka Maqsood) stated, "JeM had already taken significant steps to support the operation, and stated "the missile was ready." Days later on April 10, 2009, Mr. Hussain (aka Maqsood) picked up Mr. Cromitte at his house. Standing in front of the house was a unknown party now identified as Dauod. Da d now know as David Williams, accompany the two men with no advance knowledge where or what he was summons to perform. As the three men set out to Riverdale Section of the Bronx, where Cromitie photographed the Riverdale Jewish Center and the Riverdale Temple. Later that day Cromitie took photographs of Airplanes and Stewart Airport.

Thirteen days later on April 23, 2009, the three men met again for the second time. Cromitie held a conversation with Hussain (aka Maqsood) pertaining to IED (improvised explosive device). Hussain (aka Maqsood) alledgedly stated, "....100 miles and explained, 'you can sit down here, and it blows up there.'" Id. Trial Transcripts: 3846. Evidence furthermore, provided that Hussain (aka Maqsood) suggested that he would train romitie on how to use the rock launcher. Evidence further alleged that Movant stated he wanted to participate.

The next day, the three men drove to Stewart Airport. Movant is alleged to have asked Cromitie for the camera and took some surveillance pictures. The next day, the three men discussed taking rooms at the nearby Marriott Hotel to hide out after the planned attacks. Hussain (aka Maqsood) outlined the attacks and plans, including the synagogue attack, and also designed how the bombs

5

would be denotated remotely from the hotel. Id. <u>Trial Transcripts:</u> 3914. During these planning session, additional co-horts were discussed and solicited. Evidence alleged that Mr. Cromitie recruited Onta Williams to participate in the scheme. Afterwards, on April 23, 2009, in a recorded telephone conversation Hussain (aka Maqsood) outline the entire planned attack on Americans and Jewish synagogue. Movant is alleged to instruct Cromitie that he had recruited also an additional co-hort Laguerre Payne. Once Mr. Payne was recruited he attended a meeting where Cromitie explained that "Yahudi" means "jew." Id. <u>Trial transcripts:</u> 4079. Thereafter, meeting included bombing two synagogues and launching stinger surface type air missiles at Stewart Airport. Evidence provides that Mr. Payne allegedly aksed Cromitie "how long every job would take," and at that moment Hussain (aka Maqsood) responded "ten minutes." Id. <u>Trial Transcripts:</u> ____. Evidence disclosed that Cromitie allegedly suggested that the men change their identities in phone calls to code names. Such as, "Charles," was used for Cromitie; "Manny," was used for David Williams; "Brooks," was used for Onta Williams; "Bond" was used for Payne, and "Troy," was used for Hussain (aka Maqsood). Inaddition the men agreed upon codes words such "eggs" for phones, "the pilon" for the Bronx, "beans" for "rockets," "birds" for planes, and "[t]he trains are coming" for "the police are coming." Id Trial Transcripts at 4090-91.

Payen confirmed that all he had to say was that the trains are coming. Cromitie ended the meeting by saying, "this is going down in history." Id. Trial Transcripts at 4104.

6

Evidence by the Government provided that David Williams allegedly told Cromitie that he (David) wanted to be armed. So on April 30, David Williams purchased a semi-automatic pistol. Two days before, Only Williams had tried to purchase two guns. On May 1, Payen took Hussain to the apartment of a person Payen paid was willing to sell guns, but there was no response to a knock at the door.

On May 1, Hussain and all four defendants drove to Stewart Airport to conduct more surveillance  Evidence by the government alleged all parties agreed on the best spot from which to launch the Stinger missiles. They also discussed the locations where Onta Williams and Payen would be stationed as lookout. . The whole group then drove to Hussain's house and dicussed the plan of attack.
May 6, 2009, Hussain drove Cromitie and David Williams, and Payen to a warehouse in Stamford, CT, where the FBI had stored three fake bombs and two fake Stinger missiles. Hussain instructed them how to lunch the missiles and how to wire the detonating devices for the bombs. After one missile and the bombs were loaded into Hussain's car, the four drove to a storage facility in New Windsor  NY, where Hussain had rented storage lockers. Cromitie, David Williams, and Hussain unloaded the weapons and placed them in the lockers while Payen acted as a loockout. Id. Trial transcritps at 927.

Thereafter, the group then hugged each other and shouted, "Allahu Akbar, God is great." Id.

The government's evidence alleged, later that night, Payen explained to Onta Williams how the missile operated. At a meeting on May 8, Cromitie told the other defendants that there were 25 thousand balls (ball bearing) in the bomb and that "once them balls go off, they go anywhere." Id. Trial Transcripts at 4281.

7

In line with this argument counsel looked at the indictment before trial and failed to investigate the dates that involved movant's conduct within the conspiracy. See 2015 U.S. D.st. LEXIS 52078::Bennett v. United States::April 21, 2015(quoting Strickland, 466 U.S. at 691.).

CLAIMS TWO: INEFFECTIVE ASSISTANCES AS VIOLATING SEARS RULE:

Movant now argues that counsel's failure to challenge the government's key co-conspirator as in violations of the Sears Rule denied him a fair trail. See 2015 U.S. Dist. LEXIS 26377::United States v. Brown::march 3, 2015(Brown argues that Oliver was a government agent at the time of the robbery and thus he could not be convicted of conspiracy as alleged in Count One of the superseding indictment.). Id. Here counsel looked at the government's key witness and only witness as a entrapment defense but failed to question this witness long and uninterrupted history with the FBI as their personal cohort whom used outrageous conduct to conspire and enduce movant into the crimes of terrorism. See Mathews v. United States, 485 U.S. 58, 62-63, 108 S.Ct. 99 L.Ed. 2d 54 (1988). had counsel raised that it was the government's enducement with using a known cohort or agent of their own to entrap the movant into the conspiracy there is a likelihood the witness would have not been allowed to testify. Notwithstanding, his testimony, but equally had counsel raised this defense, cahllenging the government's key witness under the Sears Rule, there is high probability that the jury instructions on the conspiracy would have been challenged as instructing the jury about this long and uninterrupted history as a government informant.

8

See 2015 U.S. Dist. LEXIS 26377::United States v. Brown::march 3, 2015.

Under the Brown anaylsis, counsel failure to request that the court instruction the jury regarding the conspiracy with a known informant that there is a likelihood that the jury would have discredited the conspiracy count. See 2015 U.S. Dist. LEXIS 71727:: United States v. Parker::June 3, 2015(citing United States v. Burgos, 94 f. 3d 849, 862 (4th Cir. 2003). Here, holding that the conspiracy with the government's key witness bares considerable credibility dterminations and this credibility must be determined by the jury." See United States v. Wilson, 118 F. 3d 228, 234 (4th cir. 1997).

Because the entire case hedged upon the entrapment with a known government it was counsel's duty to request that the court instruct the jury on the "Sears Rule" instructions to afford movant effective assistance of counsel. 2/

---

F.N. 2
The Supreme Court's recent decision Johnson v. United States, 135 S.CT. 2551, (2015) holds that the conspiracy as a non-violent offense, movant preserves his sentencing claims for another day before this court. See 28 U.C.S. 2255 (f)(3).

9

E. <u>CLAIM INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL</u>:

Movant now argues that the Sixth Amendment right to counsel extends through out an appeal. See <u>Sanders v. United States</u>, 373 U.S. 1, 16, 83 S.Ct. 1068, 19 L. 2d 148 (1963). Here, counsel failed challenged the indictments dates that excluded him from the agreement with a co-defendant; Secondly, counsel failed to cahllenge the evidence from the starting dates of the conspiracy as prejudice to his defense, Third, counsel failed to include in his defense that the government's key witness was part of the conspiracy and that movant could not conpsire with a known government informant, fouth, that the courts instuction did to insturct the jury on the factual finding that the jury must make to admit the co-conspirator's statements and evidence base on an interpretation of this witness as violating the "sears rule," and five, that the appeal on the entrapment defense and outrageous conduct did not artifully explain that the the text of this challenge centered upon a conspiracy with a government agent. See <u>United States v. McKinney</u>, 707 F. 2d 381, 384 (9th Cir. 1983); <u>United States v. Sears</u>, 663 F. 2d 896, 904-05 (9th Cir. 1981); and <u>United States v. Giese</u>, 597 F. 2d 1170, 1195 (9th Cir. 1979).

Because the indictment, jury instructions equally denied movant effective assistance of counsel, it is further requested that movant be allowed to include sentencing errors in line with the Supreme Court's recent decision <u>Johnson v. United State</u>, 192 L.Wd. 2d 569 (2015).

WHEREFORE, the listed claims and aruguments it is requested that (1) an evidentairy hearing conduct to sort through the volume of documentations in support of the errors, 28 U.S.C.§2255(b), authurization to amend under rule 15(a) a Johnson related sentencing errors within the one-year statutory limitations, and or vacate the conviction and sentence in line with the Sixth Amendment right to counsel during the pre trial, trial, and on appeal.  Fiat Justitial

Dated:      September 16, 2015.

                              Respectfully submitted,

/s/ _____
    David Williams
    Fed. Reg. No. # 70659-054 SHU
    Federal Correctional Institute Gilmer
    Post Office Box 6000
    Glenville, West Virginia 26351-6000

## CERTIFICATE OF SERVICE

I certify that a true original and copy of an application under 2255 and memorandum in support therein, was mailed on this day ___ of September, 2015 to the listed party. See <u>Houston v. Lack</u>, 487 U.S. 266, 271, 108 S.Ct. 2379, 101 L.Wd. 2d 245 (1988):

c/o Clerk of the Court
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 120
New York, NY 10007-1312

                /s/_____