UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT

OF NEW YORK

DAVID WILLIAMS,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

MOTION IN ACCORDANCE TO RULE 5(d) PURSUANT TO RULES GOVERNING SECTION § 2255, HEREIN A RESPONSE TO GOVERNMENT'S BRIEF:

        The House Speaker Paul Ryan said, he had been wrong about criminal justice. "One of the things I learned is that there are a lot of people who've been in prison that committed crimes that were not violent crimes," he also said, "Once they have that mark on their record, their future is really bleak."

INTRODUCTION:

        NOW COMES DAVID WILLIAMS (hereinafter petitioner), submits this instant "reply" motion pursuant to an order granted by the leave of court, dated: May 3, 2016. In which during such times to properly research, draft, and prepare this reply motion, on or about May 9, 2016, around 6:30pm, eastern standard, United States Penitentiary Lee (where I am currently reside) went on "lockdown" status for approximately two weeks. Thereby, leaving the petitioner no access to the

courts while [considered] on lockdown status. Ex parte Hull (1941)312 US 546, 85 L Ed 1034, 61 S Ct 640, reh den 312 US 716, 85 L Ed 1146, 61 S Ct 823; Cochran v. Kansas(1942)316 US 255, 86 L Ed 1453, 62 S Ct 1068; Johnson v. Avery (1969)393 US 483, 21 L Ed 2d 718, 89 S Ct 747; Younger v. Gilmore(1971)404 US 15, 30 L Ed 2d 142, 92 S Ct 250; Cruz v. Hauck(1971)404 US 59, 30 L Ed 2d 217, 92 S Ct 313; Cruz v. Beto(1972)405 US 319, 31 L Ed 2d 263, 92 S Ct 1079; Procunier v. Martinez(1974)416 US 396, 40 L Ed 2d 224, 94 S Ct 1800, 71 Ohio Ops 2d 139; Wolff v. McDonnell(1974)416 US 396, 40 L Ed 2d 224, 94 S Ct 1800, 71 Ohio Ops 2d 139; Wolff v. McDonnell(1974)418 US 539, 41 L Ed 2d 935, 94 S Ct 2963, 71 Ohio Ops 2d 336; Bounds v. Smith (1977)430 US 817, 52 L Ed 2d 72, 97 S Ct 1491.

  After two weeks of lockdown, the institution yet again lockdown for two days: June 13, 2016, around or about 9:00pm, eastern standard time; the cell doors were unlocked with no movement to the law library, then around or about 4:00pm, return to cell for institution count until June 14, 2016, around or about 1:00pm, eastern standard time. On or about June 21, 2016, U.S.P. Lee, A-Unit was on for tuberculosis in regards to unknown inmate, thereby leaving no general movement or access to the law library in Education Department; movement resume later that day. On or about June 22, 2016, lockdown from 11:55am to 2:00pm in regards to inmate fighting at U.S.P. Lee, B-Unit. On or about June 25, 2016, approximately 9:30pm, power went out all over U.S.P. Lee, lockdown until June 27, 2016 approximately 12:00pm; and lockdown again from 6:00pm to 8:00pm. Under such denial of due process, that is no access to the courts......humbly request this court to take into

consideration the burden of petitioner to timely submit the response per Rule 5(d) governing section 2255 proceedings and permit such motion to proceed and therefore make a proper ruling......respectively.

ARGUMENT ANALYSIS:

In order to establish ineffective representation, the defendant must prove both incompetence and prejudice." Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S. Ct. 2574, 91 L. Ed. 2d 305(1986); see also Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674(1984).

ARGUMENT:

I. WILLIAMS WAS PREJUDICED DURING JURY TRIAL WITH CO-DEFENDANT "CROMITIE"; COUNSEL FAILED TO SUBMIT A SEVERANCE PRE-TRIAL MOTION, THEREFORE THE EVIDENCE OF CROMITIE'S PRIOR STATEMENTS AND CONDUCT VIOLATED HIS CONSTITUTIONAL RIGHT UNDER INEFFFECTIVENES OF COUNSEL:

The Government contends the petitioner argument is not availing in any of his grounds he submitted in his initial § 2255 motion, especially in relation to (1) counsel should have moved to sever [Movant] from trial with his co-defendants (Ground One)(emphasis added), and (2) [Counsel] should have objected to purported testimony from the CI that [Movant] was a member of the conspiracy "from June 2008" forward(Ground Two)(emphasis added). see: Docket no. 224, dated: 12/17/2015, pg. 13, ¶ B.

3

The Government suggested under Rule 8(b) of the Federal Rules of Criminal Procedure (hereinafter as Fed.R.Crim.Pro.), since all defendants were filed under the same indictment, dated: 6/02/2009, see: Docket no. 14., it automatically "promotes efficiency and prevent the injustice of inconsistent verdicts." Zafiro v. United States, 506 U.S. 534, 537, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). Id., pg. 14. The Government further alleges the preference is particularly strong when defendants participated in a common plan or scheme. Salameh, 152 F.3d at 115. (emphasis omitted). By the Government notions such of mixed presumption(s), that Movant cannot meet the burden of Fed.R.Crim.Pro. 14(a).

Fed. R. Crim. Pro. 14(a) states in relevant part: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

The severance motions incorporated a request for severance under Fed.R.Crim.P. 14, which allows the court in its discretion to sever charges of defendants, even where they have been properly joined, if failure to do would prejudice the defendant. A motion under the rule is committed to the sound discretion of the trial court and is "virtually unreviewable." United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988)(quoting United States v. Stirling, 571 F.2d 708, 733(2d ed. 1977)), cert. denied, 439 U.S. 824, 58 L. Ed. 2d 116, 99 S. Ct. 93(1978)), cert. denied, 490 U.S. 1004, 104

L. Ed. 2d 153, 109 S. Ct. 1637 (1989). It is thus not sufficient to show a likelihood that a separate trial would have benefited the defendant. Rather, there must have been prejudice so substantial as to amount to a "miscarriage of justice." United States v. Nersesian, 824 F.2d 1294, 1303 (2d Cir.)(quoting United States v. Ban, 750 F.2d 1169, 1177(2d Cir. 1984), cert. denied, 472 U.S. 1019, 105 S. Ct. 3482, 87 L. Ed. 2d 617(1985)), cert denied, 484 U.S. 957, 108 S. Ct. 355, 98 L. Ed 2d 380(1987); see United States v. Chang An-Lo, 851 F.2d 547, 556(2d Cir.), cert. denied, 488 U.S. 966, 109 S. Ct. 493, 102 L. Ed. 2d 530 (1988).

A defendant seeking to overturn a denial of a severance motion, furthermore, must show that he was so severely prejudiced by the joinder as to have been a fair trial, "not that he might have had a better chance for acquittal at a separate trial." United States v. Burke, 700 F.2d 70, 83(2d Cir.)(quoting United States v. Rucker, 586 F.2d 899, 902(2d Cir. 1978)), cert. denied, 464 U.S. 816, 78 L. Ed 2d 85, 104 S. Ct. 72 (1983).

In challenging a trial court's denial of a severance motion, a defendant must demonstrate that he suffered "substantial prejudice" as a result of the joint trial. United States v. Potamitis, 739 F.2d at 790. This is a heavy burden, requiring a showing that a "miscarriage of justice" has occurred. Id.

   The Government failed to show and/or provide.....why the Movant should not receive a fair trial by the way of severance, Fed. R. Crim. Pro. 14(a) in accordance to their Memorandum of Law. Id., supra. In the Second Circuit its binding precedent under the Severance analysis states that

"the court should sever defendants who are properly joined under Rule 8(b) when the prejudice against a defendant is so great that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Rittweger, 524 F.3d 171, 179 (2d Cir. 2008)(quoting Zafiro, 506 U.S. at 539). Such a risk may be heightened where, for example, "many defendants are tried together in a [complex case] and they have markedly [different degrees of culpability]....."Zafiro, 506 U.S. at 539. Prejudice that warrants severance may also be present if "essential [ex]culpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." id. The determination of whether such prejudice exists is highly fact-specific and must be evaluated on a case-by-case basis. Id. Moreover, the decision of whether to server a trial is committed to the sound discretion of the district court. United States v. Wilson, 11 F.3d 346, 353(2d Cir. 1993). Under such scrutiny by the Second Circuit, the facts submitted below ....warrant further review under Evidentiary hearing.

      Movant went to jury-trial and was found guilty on all counts in relation to his co-defendant James Cromitie. During which, his attonery failed to submit a pre-trial "severance" motion under Fed. R. Crim. Pro. 14(a). Following after, a timely notice of appeal was submitted under three principal claims: (1) the evidence established entrapment as a matter of law; (2) the Government's conduct in persuading Cromitie and, through him, the other defendants to participate in the plan was outrageous conduct in violation of the Due Process Clause;

and (3) the prosecution knowingly presented false testimony of its undercover informant Hussain in violation of the Due Process Clause. see: United States v. Cromitie, 727 F.3d 194 (2d Cir. 2012). The Second Circuit concluded all convictions were affirmed. Id.

The Second Circuit's Holding(s) were (1) When used as one of the three means of showing "[pre]disposition" for purposes of a valid entrapment defense, design took its meaning from the context of the type of criminal activity comprising the specific offenses a defendant had committed; (2) Defendants failed to show entrapment as a matter of law where although an informant's efforts to persuade one defendant to launch missiles at an Air National Guard base constituted inducement, the jury was entitled to find that he had a predisposition to inflict serious harm on the the United States; (3) The jury charge on entrapment was not a basis for overturning the conviction as the court rejected the attempts to expand the entrapment defense; (4) The government's conduct in persuading defendant's to commit the charged offenses was not so outrageous as to violate the Due Process Clause. id.

What is so significant as to the record; the record is silent as to the Counsel's strategic decision to defend his client under entrapment alongside his co-defendant ("Cromitie") in turn prejudice Movant's due process. To support this allegation, we look to the salient element within the entrapment holding underlying Second Circuit's precedent: (1) on existing course of similar criminal conduct; (2) the accused's already formed design to commit the crime or similar

7

crimes; (3) his willingness to do so, as evinced by ready complaisance. (emphasis added). United States v. Becker, 62 F.2d 1007, 1008(2d Cir. 1933). When you consider these factors the record reflects, Cromitie failed to prove his was entrapped, by a vote two to one in the Second Circuit, Chief Judge Jacobs Concur in part and dissents in part. See: (United States v. Cromitie, 727 F.3d 194, 216-17(2d Cir. 2013)("the evidence sufficed to permit the jury to find predisposition and reject that entrapment, defense. The defense was not established as a matter of law.")(citation omitted).

    What the government is suggesting, the fact all co-defendant was indicted under Rule 8(b) of the Federal Rules of Criminal Procedure," and even if the Indictment had alleged that ["Movant"] did not conspire with Cromitie until April 2009, and even if Williams were tried separately, evidence of Cromitie's prior engagement with the CI would have been admitted against Williams at that trial []." see: Id., supra., pg. 16. Admittedly, the Government could bring such evidence in most favorable to their prosecution, but, this would not have been strong enough to support a conviction beyond a reasonable doubt without "Direct" testimony from Cromitie - himself, such evidence would be considered a Confrontation Clause issue without more or less. The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 17792004). An out-of-court statement is testimonial if the "primary purpose" underlying

it was to establish an evidentiary record in a manner that might reasonably be expected to be used in a later legal proceeding. Bullcoming v. New Mexico, 131 S. t. 2705, 2720, 180 L. Ed. 2d 60(2011)(Sotomayor, J., concurring). see generally Crawford, 541 U.S. at 51-52.The "Confrontation Clause simply has no application to nontestimonial statements." United States v. Feliz, 467 F.3d 227, 231(2d Cir. 2006).

    Which means, the prosecution would have to depend on two theor[ies] to secure a conviction beyond a reasonable doubt standard: (1) Cromitie's prior statement(s) in regards to predisposition needed to be submitted to evidence, if Movant's counsel proceed under Severance; and (2) Cromitie's direct testimony, in order to prove the connection between the Movant and the informant to support predisposition. Remember....the record reflects, "the District Court acknowledged that there was "no direct evidence of when [or] how these defendants were solicited."" Cromitie II, 2011 U.S. Dist. LEXIS 48201, 2011 WL 1842219, at *15. Id. supra. 727 F.3d 216-17.

    If the Government were to entertainment the notion to bring Cromitie's prior statement(s) and/or a [possible] testimony, he would fail on all endeavors and the interest of justice would also fail. Cromitie would not be a prominent and trustworthy witness on the stand.

    The record supports this:
"the FBI knew that Cromitie's boasts about his connections to Afghanistan and his ostensibly violent criminal past were

empty." see: United States v. Cromitie II, 2011 U.S. Dist. LEXIS 48201 at 5.

"It is true that quite a bit of what Cromitie told Hussain turned out to be false or exaggerated. It is also true that, on May 1, 2009, Cromitie gave his co-defendants a somewhat different account of who had originated the idea of doing jihad." Id. at 7. supra.

"There is not the slightest doubt in my mind that James Cromitie could never have dreamed up the scenario in which he actually became involved. And if by some chance Cromitie had imagined such a Scenario, he would not have had the slightest idea how to make it happen." Id. at 10., supra.

"and said (falsely) that while he (Cromitie) was born in the United States, his father was born in Kabul, Afghanistan three times, most recently in 1995." United States v. Cromitie III, 781 F.Supp.2d 211 at 4; 2011 U.S. Dist. LEXIS 48200.

"Notes contain more biographical information about Cromitie's family an acquaintances, as well as entries about Cromitie's alleged criminal history - - including a tall tale about Cromitie's dispute with a drug dealer, which ostensibly led Cromitie to shoot the dealer's son (using a gun obtained from a mythical sibling who was purportedly a New York Police Officer). Cromitie claimed (falsely) to have spent 15 years in prison for this crime. as we know from the trial testimony, this and many other statements Cromitie made about his "violent" criminal past are pure fiction." Id. at 5, supra.

"Cromitie is not a particularly intelligent man." Id. at 12, supra.

      Even under good argument sake....to be fair [what's

good for the goose is good for the gander] if the government didn't ever entertainment the interest to use Cromitie's as a witness, the fact this is a complex case stated by the court: "the entrapment issue presented by this case is far more complex, and hence far more difficult to resolve, than in any other case with which the court is familiar." Id. at 23, supra. And the court further admitted: "It is beyond question that the government created the crime here. As to Cormitie, the view of the evidence most favorable to the Government comfortably supports the jury's verdict. But the evidence of predisposition against the defendant's other than Cromitie is entirely circumstantial." Id at. 24, supra.

The Government knew by all facts submitted above, including "attacking Hussein's credibility was the centerpiece of the defense strategy, Id. at 26, supra., under one trial with all defendants present, a most prejudice circumstances existed under stark conditions, which cause the trier of fact, i.e., the judge and jury to conclude all evidence in relation to Cromitie's "spill-over" [prejudicial] evidence. It is quite simple, you can-not feed a baby spoil-sour milk and expect the baby to endure it.  "This supports relief that justice requires." Fed.R.Crim.P 14(a).

Counsel erred by not submitting a severance motion under Fed.R.Crim.P 14(a), in which this is a discretionary review to be preserved for Second Circuit appellate review. United States v. Wilson, 11 F.3d 346, 353. This error constitute a Strickland standard in which no attorney would overlook, the probability of reasonableness would concur a different result under such factual nature. Strickland, 466

U.S. at 693-94. An evidentiary hearing is warranted as to why under Due Process, the counsel's error for not submitting a severance motion in light of the development in regards to predisposition analysis. Movant has met the severance analysis under Zafiro pursuant to United States v. Rittweger, 524 F.3d 171(2d Cir. 2008). Therefore, under United States v. Wilson, supra., under the mercy of the court.....remand & resentence, and any other relief warranted.

II.     THERE WAS FATAL VARIANCE BETWEEN THE INDICTMENT AND THE PROOF:

"The government contended at trial that [Movant] began to conspire with Cromitie in or about April 2009 (Tr. 3149), within the period alleged in the Indictment." Since the [conspiracy] that the government proved against [Movant] fell within the period charged in the indictment,.......there was no fatal variance." Heimann, 705 F.2d at 667. see: Docket no. 224, dated: 12/17/2005, pg. 18 ¶ 2.

On and for the record it states in relevant part: "the District Court acknowledged that there was "no direct evidence of when or how these [three] defendants were solicited." Cromitie II, 2011 U.S. Dist. LEXIS 48201, 2011 WL 1842219, at *15. The only evidence on the record, is what the defendant said and did to conclude a guilty verdict in which defeated their entrapment defense. see: 2011 U.S. Dist. LEXIS 48201, WL at *23. But, nevertheless, the government failed to show in this instant [reply] motion the government proved there was no fatal variance. The record reflects "everything that the ["Movant'] did was a the behest of the Government; as a

When you look to the technical accept to the letter "A" it states for clarity: "1. Used before nouns and noun phrases that denote a "single", but "unspecified, person or thing <a mountain><a woman>. Webster's New Basic Dictionary, pg. 1.

Ther curative instruction is vague, it does not clarify who is the person? and/or who is the particular defendant? Id, supra. When the government tries to include its summation to support this vague curative instruction, the jury is left under ambiguity conclusion to render who is this instruction relate to, since all defendant were tried together and the instruction was considered for a "single" individual or a "particular" defendant.

Under such attention, the Government was right to conclude the Movant was right in the matter of law, a Sear Rule is permitted and counsel failed to address such error to the court for the betterment of justice. Furthermore, since this supports Claim one (i.e., Severance), in which Movant should have had a severance, but instead found miscarriage of justice due to incompetence by Counsel.

CONCLUSION:

In a newspaper article, Karen J. Greensberg, the executive director of the Center on Law and Security at New York University, who sat through much of trial, said: "If this wasn't an entrapment case, then we're not going to see an entrapment case in a terrorism trial. [We] really need to think about ideology as part entrapment. In this case, they took people who might or might not commit hate crime; and led

14

them along the path to jihad. The ideological underpinnings of the crime did not originate with them." (NyTimes).

WHEREFORE, Movant moves this court to grant the instant motion and move for evidentiary hearing in light of facts submitted above, also request appointment of counsel, and any other relief.

All foregoing is true and correct, under penalty of perjury pursuant to 28 U.S.C. § 1746(2).

RESPECTFULLY SUBMITTED: *David Williams*
7/7/16

DAVID WILLIAMS

15

## CERTIFICATE OF SERVICE

I hereby certify that on ___July 8, 2016, A.D.___ I sent a copy of
                                                [date]

the ___Government response pursuant to $2255___,
                            [name of document]

to: ___U.S. Attorney's Office___

at ___One St. Andrew's Plaza___

___New York, N.Y. 10007___, the last known address,
by way of United States mail or courier.

___July 8, 2016, A.D.___
Date

___David Williams___
Signature

David Williams
#70659-054
U.S. Penitentiary Lee
P.O. Box 305
Jonesville, VA
24263-0305

USMP3
SDNY

POSTAGE
DUE

New York Southern District
Clerk of Courts
500 Pearl Street, Rm 120
New York, NY
10007-1312

Legal Mail

